# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Joao Teixeira,

              Appellant,

      -vs-

Daniel McDermott,
United States Trustee for
Region 9, et al.,

              Appellees

Case No.  1:19cv866


JUDGE PAMELA A. BARKER


MEMORANDUM OPINION AND
ORDER

This is an appeal from the April 5, 2019 decision of the United States Bankruptcy Court, Northern District of Ohio denying the Appellant/Debtor Joao Teixeira's "Second Motion to Vacate Order Overruling Debtor's Objection to Trustee's Notice of Intent to Sell Personal Property and Approving Trustee's Sale of Personal Property."  For the following reasons, the decision of the Bankruptcy Court is AFFIRMED.

## I. Facts

This matter relates to the Chapter 7 trustee's sale of the Appellant/Debtor Joao Teixeira's (hereinafter "Teixeira") purported interest in a trust that includes an alleged sixteenth century painting by Michelangelo Merisi da Caravaggio, and the bankruptcy court's denials of Teixeira's objections thereto.

### A. Initial Bankruptcy Proceedings

On September 6, 2017, Teixeira filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  *See In re Teixeira*, Bankruptcy Petition # 17-15280 (U.S. Bank. Ct., N.D. Ohio)

(Bankr. No. 1.)[1]  Therein, Teixeira estimated that his assets were worth between $0 - $50,000, and his liabilities were between $100,001 - $500,000.  (*Id*. at p. 6.)  In Schedule B of his Petition, Teixeira answered "no" to the question of whether he had an interest in any "trusts, equitable or future interests in property . . . and rights or powers exercisable to your benefit."  (*Id*. at p. 13.)  In addition, he answered "no" to the question of whether he had an interest in any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment."  (*Id*.)  He also indicated that he had no other financial assets, or any property of any kind, that he did not already list.  (*Id*. at p. 14.)  Finally, in his Statement of Financial Affairs, Teixeira answered "no" to the question of whether he was a party in any lawsuit, court action, or administrative proceeding within 1 year before filing for bankruptcy.  (*Id*. at p. 35.)

The United States Trustee appointed David O. Simon to serve as the Chapter 7 Trustee for Teixeira's case.  On September 18, 2017, the United States Trustee sent information to Mr. Simon regarding Teixeira's potential interest in a Florida trust.  The corpus of the trust consists exclusively of a sixteenth-century oil painting "David Killing Goliath" that is sometimes attributed to Michelangelo Merisi de Caravaggio (the "Trust").  It is undisputed that the Trust is the subject of litigation in the Circuit Court of the Seventh Judicial Circuit in Volusia County, Florida, which has been pending for many years.  *See In re Caravaggio Trust*, Case No.: 2001-30696-CICI-32; *Joao Teixeira-Nascimiento et al. v. Martin C. Boire P.A. et al*., Case No: 2013-31477-CICI-32 (collectively, the "Florida Litigation").

---

[1] Hereinafter, all references to filings in the Bankruptcy case will be to "Bankr. Doc." number.  References to filings in the instant case will simply be to "Doc. No."

2

On September 20, 2017, Mr. Simon sent a letter to an attorney representing the Trust beneficiaries in the Florida litigation, Cesar J. Dominguez, requesting confirmation that Teixeira was in fact a party to that litigation, as follows:

> In the course of our review of the bankruptcy filing, we have discovered various proceedings relating to The Caravaggio Trust. Correspondence issued on April 5, 2017, by the trustee of the Trust is directed to, inter alia, John Teixeira Gueits a/k/a/ Joao Teixeira, Jr., at the same address as the debtor in the referenced bankruptcy case. Further, pleadings filed in litigation pending in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida, indicate that your Firm represents the trust beneficiaries.
>
> In light of your representation of the trust beneficiaries in the pending litigation, it would greatly assist in the administration of the bankruptcy case if you could confirm to me that the debtor in the bankruptcy case and the trust beneficiary identified above are one and the same person. If they are not, I would appreciate your explanation as to how they differ.

(Bankr. Doc. No. 52, Exh. A.)  Mr. Dominguez failed to respond to this letter.

On October 12, 2017, Mr. Simon held the § 341 meeting of creditors.[2]  During this meeting, Mr. Simon expressly asked Teixeira about the Caravaggio Trust and pending Florida litigation. Teixeira responded that the "Florida trustee took all" the money and that there was "nothing for [him; i.e, Teixeira] in there."  (Bankr. Doc. No. 52, Exh. B. at Tr. 9-11.)  Specifically, the transcript of the meeting reflects the following exchange:

> Q:    What do you know about some litigation pending in Florida dealing with something called the Caravaggio Trust?

---

[2] Pursuant to 11 U.S.C. § 341, "[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors."  The statute further provides that: "Prior to the conclusion of the meeting of creditors or equity security holders, the trustee shall orally examine the debtor to ensure that the debtor in a case under chapter 7 of this title is aware of-- (1) the potential consequences of seeking a discharge in bankruptcy, including the effects on credit history; (2) the debtor's ability to file a petition under a different chapter of this title; (3) the effect of receiving a discharge of debts under this title; and (4) the effect of reaffirming a debt, including the debtor's knowledge of the provisions of section 524(d) of this title."  11 U.S.C. § 341(d).

A:     I have an attorney down there *** dealing with that.  *** Basically what happened with that was an incredible case of a property that belonged to my dad.

Q:     Yeah.

A:     And the attorney that was the Trustee --

Q:     Now, what's your dad's name?

A:     Joao, the same as mine.

Q:     Okay.

A:     And basically the Trustee ended up suing that property.

Q:     Mm-hmm.

A:     And he took it, so it's his.

Q:     Well, are you in the lawsuit or is it your dad that's in the lawsuit?

A:     My dad is in the lawsuit.

Q:     Yeah.

A:     And I'm in the lawsuit.

Q:     And you're in the lawsuit too? And you're represented by an attorney by the name of Cesar Dominguez.

A:     Yep.

Q:     Okay.

A:     That property basically --

Q:     And what's Dominguez trying to do for you?

A:     Dominguez as of right now, I had to hire him in order to see what's going to happen, because the Trustee ended up suing the Trust, sold the property and took all the money for himself.  So we had to end up getting some kind of representation.  As of right now the Courts in Volusia County have said that it belongs to the Trustee, but the attorney that we got is still litigating it. But as

4

far as we know, he took all the money and the Court hasn't said anything other than it's all his.

Q:     And why didn't you tell your lawyer about this?

A:     Because I've never had any -- any even wanting on that, because as far as I know there's nothing there.

Q:     I mean, they're talking about big numbers like $14 million, $300,000, $9,106,000, and you have no idea what this is all about?

A:     Like I said, the Trustee took all of that.

Q:     Okay.

A:     There's nothing for me in there, other than my name stuck on that thing.

Q:     Well --

A:     I hate that I even got involved. It belonged to my dad and my dad doesn't speak English and he got me involved with that, and that's why my name is really attached to that.

Q:     So are you saying you didn't have any claims to this property?

A:     Oh, as far as my name is in there, my father said I could have 25 percent if I help him out, but there's really nothing I can do. The Trustee took everything.

(*Id*. at Tr. 9-11.)

On December 13, 2017, Teixeira received a discharge. (Bankr. Doc. No. 11.) Shortly thereafter, on December 23, 2017, Mr. Simon filed a Report of No Distribution, in which he stated as follows: "I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and [report] that there is no property available for distribution from the estate over and above that exempted by law." The Report further indicates the value of the "claims scheduled to be discharged without payment (without deducting the value of collateral or

5

debts excepted from discharge)" was $161,605.90. The docket reflects a final decree was entered on January 2, 2018 and the case was closed. (Bankr. Doc. No. 14.)

### B. Reopening of Bankruptcy Case

Several months later, Mr. Simon received an unsolicited inquiry regarding a sale of Teixeira's alleged interest in the Caravaggio Trust ("Trust"). (Bankr. Doc. No. 55.) According to Mr. Simon, on March 2, 2018, he received a call from Patrick Scott, an attorney from Fort Lauderdale, Florida. (*Id*.) Mr. Scott represented himself to be the attorney for Martin Boire, P.A., the trustee of the Caravaggio Trust. (*Id*.) Mr. Scott requested that Mr. Simon write a letter for Mr. Boire's use in a show cause hearing that was scheduled to go forward against Teixeira several days later in the Florida litigation. (*Id*.)

On March 6, 2018, Mr. Simon sent the requested letter to Mr. Boire. (Bankr. Doc. No. 44, Exh. 1.) This letter states as follows:

> I am the Chapter 7 panel bankruptcy trustee who administered the bankruptcy of Joao Teixeira ("Debtor"), Case. No. 17-15280, Northern District of Ohio. Regarding that bankruptcy:
>
> I learned about the potential interest in the Caravaggio Trust, not from the Debtor, but from an investigative report from an analyst in the Office of the U.S. Trustee in my region, the information from which conflicted with the later testimony of the Debtor at the meeting of creditors held in his bankruptcy case when I confronted him with my discovery of your trust.
>
> When I questioned the debtor about who owned the beneficial interest in the Caravaggio Trust, he testified that his father owns the interest and that he has been promised a 25% interest if he helps his father recover something in the trust.
>
> I then wrote to Mr. Cesar Dominguez, a lawyer in Florida whose name appeared in a pleading entitled "Beneficiaries' Response in Opposition to Trustee's Motion for Clerk's Sale of Trust Estate" inquiring about the Debtor's interest in the Caravaggio Trust. Mr. Dominguez did not respond to my inquiry.

> Although the bankruptcy case has been closed, I have never abandoned from the bankruptcy estate whatever interest the Debtor may have in the Caravaggio Trust. Property not listed in the Debtor's Schedules remains the property of the bankruptcy estate after closing. 11 USC sec. 554(c) and (d).
>
> I am very interested in finding a buyer for whatever interest the Debtor really owns and I would seek an order of the Bankruptcy Court reopening the case to administer assets if it is subsequently determined that the Debtor has an interest in the Trust.

(Bankr. Doc. No. 44, Exh. 1.) It was Mr. Simon's understanding that Mr. Boire wanted the letter for use in the show cause hearing because he (Mr. Boire) held a sizeable judgment against Teixeira and Teixeira had failed to provide post-judgment financial disclosures previously ordered by the Florida court. (Bankr. Doc. No. 55.)

Several weeks later, on March 29, 2018, Mr. Simon received an email from an attorney named Thomas Jerla, stating that his firm's client, TAMSEF I, LLC (hereinafter "TAMSEF"), was willing to purchase Teixeira's interest in the Caravaggio Trust for $10,000. (Bankr. Doc. No. 55.)

Mr. Simon then moved to reopen Teixeira's bankruptcy case, indicating that he had "determined that there is a potential asset to administer for the benefit of creditors, consisting of the debtor's pre-petition unscheduled potential interest in an entity known as the Caravaggio Trust." (Bankr. Doc. No. 15.)

On April 25, 2018, the Bankruptcy Court reopened the case and directed the re-appointment of Mr. Simon as the Chapter 7 Trustee. (Bankr Doc. No. 17.) *See also* Doc. No. 19. Mr. Simon then withdrew his Report of No Distribution and filed an Initial Report identifying the Caravaggio Trust as an asset worth $10,000. (Bankr. .Doc. Nos. 20, 21.)

On May 18, 2018, Mr. Simon filed a Notice of Intent to Sell, which provided as follows and was mailed to Teixeira's known creditors:

PLEASE TAKE NOTICE that among the assets of this estate is the debtor's alleged beneficial interest (alleged to be 25%) in an entity known as the Caravaggio Trust which allegedly owns a painting by an Italian master named Michelangelo Caravaggio. The authenticity and ownership of the painting has been the subject of litigation for at least the last fifteen (15) years in the courts of Volusia County, Florida, and, until now, the trustee has been unable to determine whether or not there is any value in the Trust for the benefit of this estate. Recently, the trustee received an offer from TAMSEF I, LLC, a Florida Limited Liability Company, to purchase the debtor's interest, whatever it may be, in the Caravaggio Trust for the sum of $10,000.00, payable upon the expiration of the objection period for this Notice. Therefore, pursuant to the provisions of § 363 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules, the trustee proposes to sell the interest of the debtor in the Caravaggio Trust, whatever it may be, to TAMSEF I, LLC, a Florida Limited Liability Company, for the sum of $10,000.00, free and clear of any interests of any parties.

(Bankr. Doc. No. 25.)

None of Teixeira's creditors objected to the proposed sale. On June 8, 2018, however, Teixeira filed an Objection to the Notice of Intent to Sell, in which he argued that the proposed sale for the sum of $10,000 was "against sound business reason." (Bankr. Doc. No. 27.) He explained as follows:

5. The corpus of the Trust consists of an oil painting attributed to Michaelangelo Merisi Da Caravaggio known as 'David Killing Goliath' or 'David in the Act of Picking up Goliath's Severed Head.' Over the years, there has been much dispute regarding the authenticity of the painting. [FN 1: In 2012, the painting was sold for $15,080,000 and then again for $40 million shortly thereafter. However, both buyers defaulted on their loans.]

6. In 2009, Debtor purchased a twenty-five percent (25%) interest in the Trust from Lapsa International Bank. Debtor's interest is encumbered by a $753,825.53 default judgment entered against Lapsa on December 13, 2001. See Public Records of Volusia County, Book 4787, Page 4618.

7. In 2012, the painting was sold to Green Moss Partners, LLC for $15,080,000.00 with a balloon payment of $13,080,000 due on November 1, 2017. Green Moss and Southport subsequently defaulted on the loan, and a judgment was entered for $18,283,884 in favor of the Caravaggio Trust.

8. In 2014, the 7th Circuit Court of Volusia County, ordered Debtor and the other beneficiaries of the Trust to pay separate sanctions to Martin C. Biore [sic] P.A.,

trustee of the Caravaggio Trust, and Gray Robinson. Debtor was ordered to pay a total of $ 346,004.11 in attorney fees and sanctions….

(*Id*.) Contrary to his representation during the § 341 meeting that his share of the painting was "worthless," Teixeira now argued that "the potential value of [his] twenty-five percent interest far exceeds $10,000." (*Id.*)

The Bankruptcy Court held a hearing on Mr. Simon's Notice of Intent to Sell and Teixeira's Objection on June 19, 2018. Teixeira's then-counsel, Anna Wall, noted that the painting had been sold in 2012 for $15,000,000 and that his "interest is worth a lot more than $10,000." (Bankr. Doc. No. 32 at Tr. 8.) The Court then inquired as follows:

> THE COURT: Right, but the Debtor hasn't --the Debtor's only recovery would be if there was enough money to pay everybody in full and then get something. And if you're in a position to help find someone that is willing to pay I don't know what -- I mean, if you said, you know, there's somebody that's willing to pay $100,000, I think Mr. Simon's ears would pick up and he would probably say tell me who it is and I'll call them. But absent, you know, something that's going to pay 100 percent and then some to all creditors, it's really -- I don't see the Debtor has a -- I guess the technical term would be standing to say yea or nay. So, you know, if you have -- the order will- - at this point I assume you don't have anyone that's interested in paying significantly more?
>
> MS. WALL: Not significantly more. I have been in talks with my client about possibly him purchasing that interest for more than what the other party is offering.
>
> THE COURT: But one of the issues there is where is that money coming from, because if it's the Debtor offering to pay, then the question is where is this -- why is that not also an asset of the Debtor that's –
>
> MS. WALL: Well, it would be from family and the other beneficiaries in the trust.
>
> THE COURT: Again, this -- unless somebody is offering significantly more -- you know, it's those other people that would come up and say, you know, Judge, we want to pay more, and if we get -- I think we may have another matter -- but if there's a bidding dispute, you know -- not to say bidding dispute, but if there are multiple parties interested in purchasing, then they're free to ask the Court and I don't see them here. So the thought that there might be people, that's not enough for me to say no. And if there was something -- if someone came in and said, Judge, you know, give me a week

and I can get, you know, people to pay 20, 40, $50,000 for this, I think Mr. Simon would probably say, you know, we can -- he doesn't want to lose the 10,000 that he's got a deal for, but that's a different situation. So I think at this point I'm going to grant the -- or approve the Notice of Intent to Sell and overrule the objection.

(*Id*. at Tr. 8-10.)[3]

On June 21, 2018, the Bankruptcy Court entered an Order overruling Teixeira's Objection to the Notice of Intent to Sell. (Bankr. Doc. No. 30.) Teixeira did not appeal the Bankruptcy Court's Order.

The sale was subsequently consummated on July 7, 2018. (Bankr. Doc. No. 73 at p. 8, citing Exh. 13.) The Assignment effectuating this Sale was executed by Mr. Simon and provided as follows:

> FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, the undersigned, David O. Simon as Trustee in Bankruptcy for Joao Teixeira aka Joao Teixeira Gueits ("Debtor"), SSN xxx.xx-xxx ("Assignor"), the owner of a 25% interest In The Caravaggio Trust dated January 13, 1992 with its situs in Florida, does hereby assign and transfer to TAMSEF I, LLC ("Assignee") the interest of the Debtor in The Caravaggio Trust.
>
> This Assignment is effected pursuant to the provisions of 11 U.S.C. § 363 of the Bankruptcy Code, in the bankruptcy case of Joao Teixeira, Case No. 17-15280 on the docket of the United States Bankruptcy Court for the Northern District of Ohio.
>
> The Assignor hereby warrants that, pursuant to the applicable provisions of the Bankruptcy Code and the Order of the Bankruptcy Court entered on June 21, 2018, he possesses the full right and authority to enter into this agreement and to transfer the aforementioned rights, title and interest in the Caravaggio Trust.
>
> This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their successors, assigns and personal representatives.

(Bankr. Doc. 73-1 at p. 61.)

---

[3] In addition, during the hearing, Mr. Simon clarified that he did not intend to sell Teixeira's interest "free and clear." Rather, he intended to execute an assignment to the buyer of Teixeira's interest in the Trust "whatever that may be, subject to any liens, claims, or other interests of any other parties." (*Id*. at Tr. 6.)

## C.     First Motion to Vacate

In August 2018, Teixeira moved for his attorney in the Florida litigation, Mr. Dominguez, to appear *pro hac vice* and be substituted for his bankruptcy attorney.  (Bankr. Doc. Nos. 33, 37.)  The Bankruptcy Court granted Teixeira's motion over the objection of Mr. Simon.[4]  (Bankr. Doc. No. 40.)

On September 11, 2018, Teixeira filed a lengthy "Motion to Vacate Order Overruling Debtor's Objection to Notice of Intent to Sell Personal Property and Approving Trustee's Sale of Personal Property."  (Bankr. Doc. No. 44.)  Therein, Teixeira argued that the sale of his 25 % interest in the Caravaggio Trust was in bad faith.  (*Id.*)  Specifically, Teixeira argued that the buyer, TAMSEF, was created by the Boire Trustee through others for the sole purpose of "gain[ing] ownership of the Debtor's 25% beneficial interest in The Caravaggio Trust, presumably for the Boire Trustee or some other person or entity other than the Caravaggio Trust."  (*Id.*)  He maintained that bad faith was evidenced by "the fact that TAMSEF was brought to the Simon Trustee by the Boire Trustee, an insider of The Caravaggio Trust, who as Trustee of The Caravaggio Trust, has been the Debtor's adversary in the Florida Cases for the last eighteen (18) years."  (*Id.*)

Teixeira further argued that "it cannot be said that the Simon Trustee adequately marketed the Debtor's Asset, or that the Simon Trustee sold the Debtor's Asset to TAMSEF for the highest and

---

[4] In his objection, Mr. Simon noted that he had received an email from Attorney Scott raising concerns about Mr. Dominguez's representation of Teixeira in the instant case.  (Bankr. Doc. No. 38.)  Mr. Simon attached to his objection a copy of Mr. Scott's email.  Therein, Mr. Scott states, among other things, as follows: "Mr. Dominguez is presently the subject of large sanctions judgments pursuant to Florida Statutes sec. 57.105(1) for baseless litigation on behalf of Teixeira Gueits in the very trust administration proceeding that the debtor concealed from you. Mr. Dominguez is a co-debtor to Teixeira Gueits for that same liability, and one who is still not listed in Teixeira Gueits' Schedule H (Co-Debtors). You've seen the orders and judgments. The judgments against Teixeira Gueits are recorded online in Book 7333, pages 4093 and 4138 of Volusia County Official Records, and those against Mr. Dominguez are recorded online at Instruments 114178350 and 114178351. My firm assigned its judgments to Mr. Boire for having paid our fees." (*Id.*)

best price, given the fact the Simon Trustee failed to obtain an appraisal of the Asset, nor did he take into consideration the value of the Asset, pursuant to the Final Judgment in favor of The Caravaggio Trust, in the amount of $18,283,884.00 . . . when the Simon Trustee sold the Debtor's Asset to TAMSEF, for the paltry sum of $10,000.00." (*Id.*) Finally, Teixeira argued that "[t]he Simon Trustee failed to demonstrate that he negotiated with TAMSEF, the terms of the sale at arm's length and in good-faith, given the fact that Simon Trustee communicated primarily with the Boire Trustee regarding the sale of the Debtor's Asset." (*Id.*)

In sum, Teixeira argued he was entitled to relief from the Sale Order on the following three grounds: (1) under Fed. R. Civ. P. 60(b)(2) on the grounds that the discovery of new evidence[5] revealed that TAMSEF was not a good faith purchaser; (2) under Rule 60(b)(3) on the grounds of fraud, misrepresentation, or misconduct by the Simon Trustee, "who colluded with the Boire Trustee, and TAMSEF, to engage in the Bad-Faith Sale of the Debtor's (25%) beneficial interest in The Caravaggio Trust;" and (3) under Rule 60(d)(3) on the grounds of fraud on the court. (*Id.*)

Both Mr. Simon and the United States Trustee filed objections to Teixeira's Motion, in which they defended the reasonableness of the sale and asserted that Teixeira lacked standing to challenge the sale because he failed to (1) disclose his interest in the Caravaggio Trust on his schedules and/or

---

[5] The "new evidence" identified by Teixeira in this Motion consisted of: (1) the March 6, 2018 letter from Mr. Simon to Mr. Boire; (2) a motion filed in the Florida litigation on August 13, 2018 by TAMSEF for substitution of party, in which it requested that it be substituted as a party in place of Teixeira in that action in light of the assignment of Teixeira's interest in the Caravaggio Trust; (3) an August 13, 2018 Motion for Continuance filed by TAMSEF in the Florida litigation; (4) the August 14, 2018 transcript of a hearing in the Florida litigation during which it was allegedly demonstrated that Mr. Jerla (counsel for TAMSEF) and Mr. Scott (counsel for Mr. Boire) participated in a court conference call together from Mr. Scott's office; and (5) the August 27, 2018 objection filed by Mr. Simon to the Bankruptcy Court's Order allowing Mr. Dominguez to appear as counsel for Teixeira in the instant case, as well as the attached email Mr. Simon received from Mr. Scott regarding his concerns about Mr. Dominguez. (Bankr. Doc. No. 44.)

during the 341 meeting; and/or (2) demonstrate that the sale of his interest in the Trust would generate assets in excess of his liabilities.  (Bankr. Doc. Nos. 52, 55.)

On October 16, 2018, the Bankruptcy Court conducted a hearing on Teixeira's Motion to Vacate.[6]  Following oral argument by Teixeira's attorney, Mr. Simon, and an attorney for the U.S. Trustee, an agreement was reached under which Teixeira would have until November 6, 2018 to have someone tender $100,000 to Mr. Simon.  (Bankr. Doc. No. 90.)  If someone tendered this amount by November 6, 2018, then the $100,000 would be used as the opening bid at an auction selling Teixeira's interest in the Caravaggio Trust.  (*Id.*)  However, if no one tendered this amount by November 6, 2018, the Motion to Vacate would be denied.  (*Id.*)

On November 6, 2018, Mr. Simon reported to the Bankruptcy Court that no one had tendered the $100,000.  (*Id.*)  That Court denied Teixeira's Motion to Vacate in an Order issued the next day.  (Bankr. Doc. No. 59.)  Teixeira then filed, and later withdrew, a motion to reconsider the Bankruptcy Court's Order denying his Motion to Vacate.[7]  (Bankr. Doc. Nos. 61, 63, 72.)  He did not appeal the Bankruptcy Court's Order to this Court.[8]

---

[6] There does not appear to be a transcript of this hearing in the record before this Court.

[7] In his Motion for Reconsideration, Teixeira argued that "the Debtor did not foresee that his Investor would take so long to return to the United States from his Switzerland business trip. It is for that reason that the Debtor was unable to send the Chapter 7 Trustee the agreed upon funds. The Debtor has filed the instant Motion for rehearing or reconsideration within the ten (10) day deadline, to have his counsel fly to the hearing with a Cashier's check in the amount of $100,000.00 to persuade the Court to alter or amend its prior order or judgment pursuant to Rule 9023, to correct clear and manifest injustice." (Bankr. Doc. No. 61.)  Teixeira states that he withdrew his motion because "the $100,000 investor was not able to return to the United States from Switzerland in time to tender funds." (Bankr. Doc. No. 73 at p. 17.)

[8] In October 2018, the United States Trustee filed a Complaint to Revoke Teixeira's discharge in bankruptcy on the grounds that he had intentionally or recklessly omitted his interest in the Caravaggio Trust, as well as the Florida litigation, in his bankruptcy schedules.  (Bankr. Doc. No. 53.)  The United States Trustee further asserted that Teixeira "intentionally or recklessly ma[de] one or more false oaths during the 341 Meeting, [and thereby] obtained a discharge through fraud." (*Id.*)  On March 11, 2019, the Bankruptcy Court entered an Order and Stipulation in which Teixeira stipulated, in pertinent part, as follows: "1. By signing below, Defendant Joao Teixeira hereby stipulates pursuant to 11 U.S.C. § 727(a)(l0) to revocation and denial of the Discharge Order, and agrees to permanently waive the discharge of any debt that was

**D.      Second Motion to Vacate**

On February 1, 2019 Teixeira filed a "Second Motion to Vacate Order overruling Debtor's Objection to Trustee's Notice of Intent to Sell Personal Property and Approving Trustee's Sale of Personal Property." (Bankr. Doc. No. 73.)  Therein, Teixeira asserted that, on December 22, 2018, his attorney, Mr. Dominguez, received a package from Mr. Boire that included (1) accounting and trust disclosure documents from Mr. Boire, (2) billing statements from Mr. Boire from November 2, 2017 through November 2, 2018, and (3) billing statements from Attorney Scott from March 2018 through October 2018.  Teixeira argued that these documents constituted "newly discovered evidence, that the Boire Trustee, and its counsel . . . colluded with TAMSEF and the Chapter 7 Trustee, from initial contact between the parties, to the preparation of documents to effectuate the bad-faith sale of Debtor's personal property to TAMSEF, and throughout the litigation that ensued to vacate the [sale of the debtor's interest]." (Bankr. Doc. No. 73.)

Specifically, Teixeira argued that these documents demonstrated the collaborative efforts of Mr. Simon, Attorney Scott, and Mr. Boire in (1) drafting the March 6, 2018 letter that Mr. Simon sent to Mr. Boire; (2) drafting the May 18, 2018 Notice of Intent to Sell Personal Property; (3) drafting the arguments for Mr. Simon to use at the hearing on Teixeira's Objections to the Notice of Intent to Sell; (4) drafting the Assignment of Interest in the Caravaggio Trust; (5) preventing Mr. Dominguez from appearing in Bankruptcy Court on Teixeira's behalf; and (6) providing documents to the United States Trustee to assist in drafting objections to Teixeira's first motion to vacate.  (*Id*.)  Teixeira further asserted these documents show that counsel for TAMSEF (Attorney Jerla) had a secondary

---

scheduled in bankruptcy case no. 17-15280-AIH, as well as any debt that could have been listed on the schedules in bankruptcy case no. 17-15280-AIH." (Bankr. Doc. No. 87.)

role with respect to the sale and, in fact, took direction from Attorney Scott in all material respects. (*Id.*)

Teixeira claimed that he "could not have obtained these [documents] prior to the granting of the TAMSEF Sale Order, working with the utmost due diligence because the Debtor did not know, and could not have known, these memos existed until [Mr. Boire] made the mistake of sending them to Attorney Dominguez." (*Id.*) Teixeira maintained that if he had gained possession of these various billing statements and disclosure documents from Mr. Boire and Attorney Scott prior to the hearing on October 16, 2018, he would not have entered into the agreement with Mr. Simon that led to the denial of Teixeira's first motion to vacate on November 7, 2018. (*Id.*)

Mr. Simon, the United States Trustee, Mr. Boire, and TAMSEF all filed separate Objections to Teixeira's Motion. (Bankr. Doc. Nos. 76, 78, 79, 80.) In his Objection, Mr. Simon adamantly denied Teixeira's allegations of collusion, as follows:

> There could be no more inaccurate characterization of the transaction in question than it being the product of collusion. On the contrary, there were no secrets here. Everything relating to the transaction was done according to the provisions of the Bankruptcy Code and Bankruptcy Rules. Proper notice was given and all necessary parties were given that notice. The court may recall that it was the debtor who filed his original motion to vacate and neglected to give notice to the purchaser and/or its counsel. The debtor points to the Trustee's March 6, 2018, correspondence to the Boire Trustee. That is not new; it is Exhibit 1 to the Debtor's original motion to vacate. The debtor points to the Trustee's communication with various parties as collusive. Again, not so. In the Trustee's Motion for Reconsideration of Order granting Amended Motion to Appear Pro Hac Vice (which was denied), the Trustee attached an email received from Attorney Scott outlining various grounds upon which he believed the Pro Hac Vice motion should have been denied. Again, no secret here. To carry the Debtor's argument to its logical and absurd conclusion, any negotiation or discussion between the parties regarding the composition of transactional documents or the legal bases for obtaining the relief requested would be collusive and improper. We all know that not to be the case.

(Bankr. Doc. No. 79.)  In its Objection, the United States Trustee argued that Teixeira's Motion

should be denied as moot under § 363(m) and *Parker v. Goodman*, 499 F.3d 616 (6th Cir. 1997).

(Bankr. Doc. No. 78.)  Both Mr. Simon's and the United States Trustee's Objections incorporated

their previous Objections to Teixeira's first motion to vacate, which raised issues regarding Teixeira's

standing to oppose the sale.  (Bankr. Doc. Nos. 52, 55.)

Mr. Boire also filed an Objection in which he first noted that Teixeira failed to schedule his

25% beneficial interest in the Caravaggio Trust or list him (i.e., Mr. Boire) as his principal creditor

with judgments against Teixeira exceeding $214,000.  (Bankr. Doc. No. 76.)  Mr. Boire also

strenuously denied having any interest in or "secret control" over TAMSEF and attached a sworn

affidavit to that effect.  (*Id.*)

Finally, TAMSEF filed an Objection.  (Bankr. Doc. No. 80.)  Therein, TAMSEF maintained

that Teixeira's "allegations about collusion in the sale are baseless and utterly false."  (*Id.*)  It asserted

as follows:

> At all times relevant to this matter, TAMSEF I, LLC is a supporting organization of
> The Ave Maria Society, Inc. ("Ave Maria"), which in turn supports various Catholic
> charities, some of which are Ave Maria University and Ave Maria School of Law.
> Ave Maria is a Florida not-for-profit corporation and a qualified charitable
> organization under 26 U.S.C. § 501(c)(3), and the sole member of TAMSEF I, LLC.
> See Bylaws of The Ave Maria Society, Inc., in pertinent part, attached hereto as
> Exhibit "A." Despite allegations to the contrary, Martin C. Boire has never been an
> officer or director of Ave Maria, nor member or manager of TAMSEF I, LLC; and
> has no legal or beneficial interest in either entity. *See* Affidavit of Daniel Dix, the
> Director/Secretary/Treasurer of Ave Maria, attached hereto as Exhibit "B". Finally,
> Attorney Thomas J. Jerla, Jr. and his law firm have donated their legal services on a
> pro bono basis regarding TAMSEF I, LLC's acquisition of the trust interest in this
> case. See Affidavit attached hereto as Exhibit "C." Ave Maria's status as a charitable
> organization and the attorney's pro bono role in this matter negates any suggestion of
> collusion since no individual or business will be profiting from the sale of the 25%
> trust interest in this matter.

(*Id.*)

Teixeira filed Replies to each of the Objections noted above. (Bankr. Doc. Nos. 82, 84, 85, 86.)

On April 5, 2019, the Bankrupty Court issued a Memorandum Opinion & Order in which it denied Teixeira's Second Motion to Vacate. (Bankr. Doc. No. 90.) In relevant part, the court explained as follows:

> The Court rejects the debtor's assertion that these various communications [between Mr. Simon, Mr. Boire, and Attorney Scott] would have produced a different result had they been presented to the Court before it approved the Chapter 7 trustee's proposed sale on June 21, 2018. The record reflects that the Chapter 7 trustee did nothing to prevent others from submitting competing bids to the $10,000 offer from TAMSEF I, LLC. The debtor and parties connected with the debtor were free to appear at the June 19, 2018, hearing with a better cash offer. But no one did. Nor did anyone appear at the June 19, 2018, hearing and ask for more time to submit a larger offer. Instead, the debtor's attorney simply argued that the debtor's interest was much more valuable than the $10,000 being offered, and indicated that there was the possibility of the debtor paying more than what was being offered, but not significantly more.
>
> Nor is there anything surprising or untoward about the Chapter 7 trustee communicating with individuals connected with the Florida litigation about buying the debtor's interest in the Caravaggio Trust. This is not a situation where anyone could bid on a twenty-five percent interest in a painting that might be a Caravaggio. Rather, any purchaser would only be buying whatever interest the debtor has in a trust that remains tied up in almost two decades of litigation with purported liens in the millions of dollars. Presumably, only parties already entangled in that litigation would be seriously interested in purchasing whatever interest the debtor may have in the Caravaggio Trust.
>
> The Chapter 7 trustee receives a commission based on the amount of money paid to creditors, see 11 U.S.C. § 326, and has a direct financial incentive to maximize the amount of money he can obtain from the sale of the debtor's assets. Indeed, the Chapter 7 trustee demonstrated his willingness to having the Court vacate the completed sale to TAMSEF I, LLC at the hearing on October 16, 2018. At the hearing on October 16, 2018, the Court asked attorney Dominguez whether he was aware of any buyers who might be willing to present higher offers for the debtor's interest. Attorney Dominguez stated that he could easily find a buyer who would be willing to offer "$100,000 . . . $50,000." Attorney Dominguez then expressed the debtor's desire to schedule an auction for the debtor's interest, with his new buyer's offer as the opening bid. The Chapter 7 trustee also stated that he would "love the opportunity to sell the debtor's interest for more money." The Chapter 7 trustee then requested a

brief adjournment. After the brief adjournment, the Chapter 7 trustee reported that he had reached an agreement with attorney Dominguez. If, as attorney Dominguez represented, someone could come up with $100,000 in three weeks, then the Chapter 7 trustee would ask the Court to vacate the earlier sale. The $100,000 would then be used as an opening bid for an auction. If the $100,000 was not tendered by November 6, 2018, then the first motion to vacate would be denied.

Accordingly, the Court rejects the debtor's contention that this newly discovered evidence provides sufficient grounds to set aside the sale of the debtor's interest in the Caravaggio Trust under Bankruptcy Rule 9024 and Rule 60(b)(2) of the Federal Rules of Civil Procedure. Nor does the Court find it necessary to address any other reasons for denying the second motion to vacate, such as mootness under § 363(m). To the extent that a reviewing court were to find this Court's own reasoning deficient, the reviewing court would remain free to "affirm on any grounds supported by the record." *See Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 408 (6th Cir. 2018).

(*Id*. at p. 15-17.)

Teixeira filed a Notice of Appeal to this Court on April 18, 2019. (Doc. No. 1.) He filed his appellate brief on July 8, 2019; and Mr. Simon and the United States Trustee filed their briefs in response on August 5 and 7, 2019, respectively. (Doc. Nos. 7, 8, 9.) Teixeira filed Reply Briefs on August 20, 2019. (Doc. Nos. 10, 11.)

## II.    Standard of Review

"The bankruptcy courts' findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed *de novo*." *B-Line, LLC v. Wingerter (In re Wingerter),* 594 F.3d 931, 935-936 (6th Cir. 2010). *See also Behlke v. Eisen (In re Behlke),* 358 F.3d 429, 433 (6th Cir. 2004); *Bellanti v. Land Escape Outdoor Maintenance*, 476 B.R. 504, 509 (E.D. Mich. 2012).

A bankruptcy court's denial of a post-judgment motion under Fed. R. Civ. P. 60(b)[9] is reviewed for abuse of discretion. *See In re G.A.D., Inc.*, 340 F.3d 331, 334 (6th Cir. 2003); *In re*

---

[9] Bankruptcy Rule 9024 provides that Fed. R. Civ. P. 60 applies in bankruptcy cases, with limited exceptions not applicable here.

*Holley*, 661 Fed. Appx. 391, 397 (6th Cir. 2016). "The burden is on the movant to bring [himself] within the provisions of Rule 60(b)." *In re G.A.D.*, 340 F.3d at 334. A court "abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Ross v. Duggan*, 402 F.3d 575, 581 (6th Cir. 2004). *See also In re Holley*, 661 Fed Appx. at 397. As the Sixth Circuit has explained, a finding of an abuse of discretion requires "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re G.A.D.*, 340 F.3d at 334. *See also Higdon v. Tire Recycling, Inc.*, 2009 WL 3645084 at * 2 (W.D. Ky. Oct. 30, 2009). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 608 (6th Cir.2000).

Moreover, this Court may affirm the bankruptcy court's decision "for any reason," even if "an issue was not raised or considered below." *Bellanti*, 476 B.R. at 511 (quoting *In re Moreland*, 21 F.3d 102, 104 (6th Cir. 1994) *superseded by statute on other grounds*, Bankruptcy Reform Act of 1994)). *See also Pidcock v. Schwab*, 569 B.R. 463, 479 (N.D. Ohio 2017).

## IV.    Analysis

The parties all agree that this Court has jurisdiction, under 28 U.S.C. § 158(a)(1), over the Bankruptcy Court's April 5, 2019 Memorandum Opinion & Order denying Teixeira's Second Motion to Vacate under Rule 60(b). *See* Doc. No. 7 at p. 1; 8 at p 1; Doc. No. 9 at p. 1. *See also In re Calloway,* 2012 WL 1003559 at *1 (6th Cir. BAP Mar. 27, 2012) ("An order denying a motion for relief pursuant to Federal Rule of Civil Procedure 60(b) is a final order.") (citing *Slutsky v. Am.*

*Express Travel Related Servs. Co. (In re William Cargile Contractor, Inc.)*, 209 B.R. 435, 435–36 (6th Cir. BAP 1997)).

Prior to considering the merits of the Bankruptcy Court's decision, however, the Court must first address another jurisdictional issue raised by the parties herein: standing.

### A. Standing

In his Appellee Brief, Mr. Simon argues that Teixeira lacks standing to appeal. (Doc. No. 8 at pp. 7-10.) The lack of standing is a jurisdictional bar to appellate review. *Harker v. Troutman (In re Troutman Enters.)*, 286 F.3d 359, 364 (6th Cir.2002). An appellate court must always, therefore, consider the threshold issue of standing because it is "under an independent obligation to police its own jurisdiction."[10] *Simon v Amir (In re Amir)*, 436 B.R. 1, 9 (6th Cir. BAP 2010). *See also In re Miller*, 2012 WL 6719421 at * 4 (6th Cir. Dec. 27, 2012); *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 665 (6th Cir. 2001).

As the Sixth Circuit has explained, "[a]ppellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith." *Troutman*, 286 F.3d at 364. In order to have standing to appeal a bankruptcy court order, an appellant must be a "person aggrieved" by the bankruptcy court's order. *See In re Amir*, 436 B.R. at 9. *See also In re Pasley*, 603 B.R. 6, 10 (6th Cir. BAP 2019); *In re Cotter*, 2017 WL 8236168 at * 1 (6th Cir. March 1, 2017); *In re Brown*, 851 F.3d 619, 623 (6th Cir. 2017); *Fidelity Bank, N.A. v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir.1996). This doctrine limits standing to those persons who "have been directly and

---

[10] Although the Bankruptcy Court did not address the issue of Teixeira's standing to object to the sale of his interest in the Caravaggio Trust in its April 5, 2019 decision, this Court is authorized, and indeed has the obligation, to consider the issue of standing to appeal since the lack of standing is a jurisdictional bar to appellate review. *Se In re Amir*, 436 B.R. at 9; *Basic Energy & Affiliated Res., Inc.*, 273 F.3d at 665.

adversely affected pecuniarily by the order.... Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights will" an appellant have standing to appeal. *Fidelity Bank*, 77 F.3d at 882. *See also In re Amir*, 436 B.R. at 9; *Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.),* 286 B.R. 49, 51 (6th Cir. BAP 2002) (citations omitted).

Courts rarely find that a chapter 7 debtor is a "person aggrieved" by a bankruptcy court order regarding the disposition of property of the estate. *See In re Amir*, 436 B.R. at *10; *In re Miller*, 2012 WL 6719421 at * 4; *Monus v. Lambros*, 286 B.R. 629, 634 (N.D. Ohio 2002).

> The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case. Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property.

*Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir.2001) (citing 11 U.S.C. §§ 541(a) and 704(a)); *see also* 11 U.S.C. § 323. Pursuant to 11 U.S.C. § 727, the chapter 7 discharge releases the debtor from all personal liability for his debts. These Bankruptcy Code sections work together to restrict a chapter 7 debtor's standing to appeal an order from the bankruptcy court. "'[A] hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights.'" *In re Amir*, 436 B.R. at 10 (quoting *In re El San Juan Hotel*, 809 F.2d 151, 154–55 (1st Cir.1987) (citations omitted)). As a result, the chapter 7 trustee is often the only party who has standing to appeal an order that impacts the disposition of property of the estate. *Id*.

The Sixth Circuit has found, however, that there are two exceptions to a chapter 7 debtor's limited standing:

> (1) if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus under Bankruptcy Code

> 726(a)(6), ... or (2) the order appealed from affects the terms of the debtor's discharge in bankruptcy.

*In re Amir*, 436 B.R. at 10.  *See also In re Miller*, 2012 WL 6719421 at * 4 (citing *Kowal v. Malkemus (In re Thompson )*, 965 F.2d 1136, 1144 n.12 (1st Cir.1992)) (citations omitted).  If the debtor fails to present concrete evidence that either exception applies, he does not have standing to challenge a bankruptcy court order.  *Id.  See also United States v. Jones*, 260 B.R. 415, 418 (E.D.Mich.2000).  To proceed under the first exception, "the debtor cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such surplus is a reasonable possibility."  *In re Amir*, 436 B.R. at 10 (internal quotation marks and citations omitted) (emphasis added).  *See also Nangle v. Surratt–States (In re Nangle)*, 288 B.R. 213, 216 (8th Cir. BAP 2003).

"Whether an appellant is a person aggrieved is a question of fact for the district court."  *Marlow v. Rollins Cotton Co.*, 146 F.3d 420, 423 (6th Cir.1998) (internal quotation marks and citations omitted).  "The burden of proving that a party is a 'person aggrieved' is on the appellant asserting standing to pursue an appeal."  *Fidelity Bank*, 77 F.3d at 882 (citing *In re Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir.1990)).  *See also Dietrich v. Nathan*, 2013 WL 3188922 at * 2 (E.D. Mich. June 20, 2013).

Here, Mr. Simon argues that Teixeira cannot meet either of the exceptions set forth above to establish standing.  (Doc. No. 8 at p. 9.)  Specifically, Mr. Simon asserts that Teixeira has not shown that there is a reasonable possibility that the sale of his interest in the Caravaggio Trust would cause a surplusage in his bankruptcy estate; i.e., that a sale would result in Teixeira's assets exceeding his reported liabilities.  (*Id.* at p. 9-10.)  In this regard, Mr. Simon notes that the Bankruptcy Court gave Teixeira the opportunity to find a $100,000 bidder but that he failed to do so.  (*Id.*)  Mr. Simon asserts that "the debtor's failure to find such a bidder is an implicit admission that his bankruptcy case could

not produce a surplus," and argues that "the debtor never produced any evidence that the trustee missed an opportunity for a higher bid than the $10,000 the trustee received." (*Id*.)

In response, Teixeira argues that he "chose to collaterally challenge the Bankruptcy Court's order authorizing the sale of Debtor's 25% beneficial interest to TAMSEF by way of a motion for relief from that order pursuant to Fed. R. Civ. P. 60(b), which is made applicable to bankruptcy proceedings pursuant to Rule 9024." (Doc. No. 11 at p. 5.) Teixeira maintains that he timely appealed the Bankruptcy Court's order to this Court and "[a]s a result, this Court has jurisdiction over the Bankruptcy Court's April 5, 2019, final order under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges." (*Id*. at p. 5-6.)

Notably, Teixeira does not argue that either of the exceptions to a debtor's limited standing (as detailed above and set forth in *Amir, supra*) applies under the facts of the instant case. Most significantly, Teixeira does not assert, much less present concrete evidence, that there is a reasonable possibility that the sale of his purported interest in the Caravaggio Trust would lead to a surplusage. Rather, Teixeira appears to argue only that the jurisdictional requirement of standing does not apply in the context of appeals from the denial of a Rule 60(b) motion to vacate.

Teixeira's argument is without merit. As an initial matter, none of the cases cited by Teixeira stand for this proposition of law. Rather, the cases cited by Teixeira only recite the general principle that a party may appeal from the denial of a Rule 60(b) motion. *See Pidcock v. Goddard (In re SII Liquidation Co.)*, 2014 WL 5325930 at * 14 (Bankr. N.D. Ohio Oct. 17, 2014) ("If a party fails to appeal a sale order, most courts find that the only other avenue for relief is Federal Rule of Civil Procedure 60(b)."); *Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir. 1991) ("The law is settled that

a ruling on a Rule 60(b) motion may be appealed under Fed. R. App. P. 4(a).").  None of the cases cited by Teixeira address (or even mention) the issue of a debtor's standing in the context of an appeal from a bankruptcy court's denial of a Rule 60(b) motion.

For the following reasons, the Court finds no merit to Teixeira's argument that the jurisdictional requirement of standing does not apply in the context of an appeal from the denial of a post judgment motion.  As noted above, Teixeira cites no authority for this proposition and offers no independent argument as to why the requirement of standing would somehow not apply in this context.  Moreover, the Court notes that the Bankruptcy Court denied Teixeira's Objection to the Notice of Intent to Sell his interest in the Caravaggio Trust on the grounds that Teixeira did not have standing to object because he failed to demonstrate that a sale of this asset would result in a surplusage.  *See* Tr. Of June 19, 2018 hearing at p. 8-10 (Bankr. Doc. No. 32).  Teixeira did not appeal the Bankruptcy Court's Order on this issue and cannot now attempt to relitigate the issue of standing in the context of a Rule 60(b) motion.  *See In re SII Liquidation*, 517 B.R. 72 (6th Cir. BAP 2014).

Indeed, the Sixth Circuit reached the same conclusion under similar facts in *In re SII Liquidation*, 517 B.R. 72 (6th Cir. BAP 2014).  In that case, the appellants were shareholders and directors of the corporate debtor seeking to prosecute a legal malpractice claim against the debtor's bankruptcy attorneys.  The bankruptcy court dismissed the adversary proceeding on September 20, 2012, holding that (1) appellants lacked standing to bring the claim directly or derivatively on behalf of debtors, and (2) the claim was barred by *res judicata*.  Appellants did not appeal this final order.  One year after the dismissal, appellants filed a motion seeking relief from the dismissal order pursuant to Rule 60(b).  Appellants sought to reopen the adversary proceeding on the basis of asserted newly discovered evidence that appellees had failed to disclose a conflict with Huntington National Bank

and sought to amend the complaint to add allegations concerning this new evidence. The bankruptcy court denied the motion for relief from judgment, and appellants appealed.

The Bankruptcy Appellate Panel of the Sixth Circuit determined that "even if there was newly discovered evidence of such a conflict, that discovery does not serve as a basis for vacating the dismissal order due to the Appellants' lack of standing." *Id*. at 75. The court explained:

> In the September 20, 2012 opinion dismissing the adversary complaint, the bankruptcy court clearly held that Appellants did not have standing to bring the underlying claims. Mem. Op. at 8–13, *Schwab v. Oscar*, No. 12–6035 (Bankr. N.D. Ohio Sept. 20, 2012), ECF No. 41. Specifically, the bankruptcy court held that only the representative of the bankruptcy estate or its successor had standing to bring a malpractice claim against Appellees absent a showing of shareholder derivative standing or assignment of the claims. The bankruptcy court further held that Appellants did not establish derivative standing nor did they obtain an assignment of claims. *Id*. at 10.

> The order dismissing the complaint because Appellants lacked standing was a final, appealable order. *Hamilton v. Appolon (In re Hamilton)*, 399 B.R. 717, 720 (1st Cir. BAP 2009) ("An order dismissing an adversary proceeding is a final order as it ends the litigation on the merits of the complaint."). Appellants should have filed an appeal if they wished to challenge the bankruptcy court's decision that they lacked standing to bring the malpractice claims. Accordingly, they are bound by the bankruptcy court's decision that they lacked standing under the law of the case doctrine. They may not raise any issues regarding the prior order in this appeal.

> \*\*\*

> In this appeal, Appellants are attempting to use a Rule 60(b) motion to re-litigate the issue of their standing to bring the underlying claims when they should have filed a timely appeal if they wished to challenge that ruling. *Marbly v. City of Southfield*, 2001 U.S. App. LEXIS 18599, at \*6 (6th Cir. Aug. 13, 2001) (Rule 60(b) may not be employed to re-litigate issues previously decided); *Hopper v. Euclid Manor Nursing Home, Inc*., 867 F.2d 291, 294 (6th Cir.1989) (citations omitted) (Rule 60(b) not a substitute for an appeal).

> **Because Appellants lack standing to be a party in the underlying complaint, they lack standing to bring a motion for relief from judgment**. "The plain language of Rule 60(b) only allows relief to be given to 'a party' to the litigation." *Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 940 (6th Cir.2013) (citations omitted). The bankruptcy court correctly determined that Appellants' motion for relief from

> judgment should be denied due to the preclusive effect of its prior ruling determining that the Appellants' lacked standing to pursue the adversary proceeding.

*Id*. at 76-77 (emphasis added).

Likewise, here, the Bankruptcy Court expressly determined that Teixeira did not have standing to object to the sale of his interest in the Caravaggio Trust and, on that basis, denied Teixeira's Objection to the Notice of Intent to Sell. (Bankr. Doc. No. 32 at Tr. 8-10; Bankr. Doc. No. 30.) Teixeira did not appeal from that Order. He offers no reason why he should now be permitted to relitigate the issue of standing in the context of a 60(b) motion and, indeed, the Sixth Circuit's holding in *In re SII Liquidation, supra* suggests that he is not, in fact, permitted to do so. Further, Teixeira's argument that the jurisdictional requirement of standing does not apply in an appeal of a post judgment motion is contradicted by the Sixth Circuit's decision in that case. *See In re SII Liquidation,* 517 B.R. at 77 (finding that "[b]ecause Appellants lack standing to be a party in the underlying complaint, they lack standing to bring a motion for relief from judgment."). Accordingly, Teixeira's argument is without merit and rejected.

Moreover, even notwithstanding the above, the Court finds that Teixeira has not satisfied either of the exceptions to a debtor's limited standing to challenge a bankruptcy court order. As set forth above, in *In re Amir, supra*, the Sixth Circuit found that "[i]f the debtor fails to present concrete evidence that either exception applies, he does not have standing to challenge a bankruptcy court order." *In re Amir*, 436 B.R. at 10. With regard to the first exception, "the debtor cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such surplus is a reasonable possibility." *Id.* Here, Teixeira has not come forward with any concrete evidence that there is a reasonable possibility of a surplus. While not addressing this issue directly in his briefing, Teixeira argues generally that his interest in the Caravaggio Trust is worth far more than the "paltry

sum" of $10,000 and notes that the Caravaggio Trust obtained a default judgment against a previous purchaser in the amount of $18,283,884.00.  (Doc. No. 7 at p. 7, 19.)  Teixeira has not, however, argued or demonstrated that there is any possibility (much less a reasonable possibility) of collecting on this $18 million judgment.  Nor has Teixeira argued or presented any concrete evidence that there is a potential buyer of his interest in the Caravaggio Trust or how much any such buyer is willing to pay for that interest.  Rather, construed liberally, Teixeira's briefs suggest only that the potential *value* of his interest is greater than $10,000.  This is not the same, however, as presenting concrete evidence that there is a reasonable possibility that the sale of his interest would result in a surplusage; i.e., that the sale would result in assets that exceed his liabilities of approximately $100,000.  Teixeira's failure to come forward with such concrete evidence is particularly problematic here, where the asset in question has been embroiled in litigation for many years and is significantly encumbered by adverse claims.[11]  *See* Doc. No. 7 at p. 7.  Moreover, as both Mr. Simon and the United States Trustee note, Teixeira was given several opportunities to identify potential buyers and failed to do so.

Accordingly, and for all the reasons set forth above, the Court finds that Teixeira has failed to demonstrate that he has standing with respect to the instant proceedings.[12]  The Court, therefore, lacks jurisdiction and will not consider the substantive arguments raised in his appellate briefing.

---

[11]The nature and extent of the adverse claims on Teixeira's interest in the Caravaggio Trust are not entirely clear.  At one point in his briefing, he states that the Boire Trustee has adverse claims in the amount of $968,649.  (Doc. No. 7 at p. 7.) At another point, Teixeira states that the Boire Trustee has adverse claims of over $9 million against his beneficial interest. (*Id.* at p. 19.)

[12] The Court further notes that Teixeira makes no argument or suggestion that the second exception to a debtor's limited standing would apply, i.e., that the order appealed from affects the terms of the debtor's discharge in bankruptcy.

## IV.    Conclusion

For all the foregoing reasons, the April 5, 2019 decision of the Bankruptcy Court is AFFIRMED.

**IT IS SO ORDERED**

                                     *s/Pamela A. Barker*
                                      PAMELA A. BARKER
Date:  March 31, 2020                 U. S. DISTRICT JUDGE